526 P.2d 708

**WATKINS CIGARETTE SERVICE, INC.,** an Arizona corporation; and Valley Vendors, an Arizona corporation, Appellants,

v.

**ARIZONA STATE TAX COMMISSION,** a body corporate and politic, and L. Waldo DeWitt, Chairman, and John M. Hazelett and Robert A. Kennedy, as members of and constituting said Arizona State Tax Commission, Appellees.

No. 11500–PR.

Supreme Court of Arizona,
In Banc.

Sept. 19, 1974.

**170**

Richmond, Ajamie, Fay & Warner, by Jack C. Warner, Phoenix, for appellant Watkins Cigarette Service, Inc.

Powers, Boutell, Fannin & Kurn, by William T. Boutell, Jr., Phoenix, for appellant Valley Vendors.

Gary K. Nelson, former Atty. Gen., N. Warner Lee, Atty. Gen., by James D. Winter, Asst. Atty. Gen., Phoenix, for appellee.

HOLOHAN, Justice.

Watkins Cigarette Service, Inc. and Valley Vendors, Arizona corporations engaged in selling cigarettes through vending machines, brought separate actions against the State Tax Commission in 1970 seeking to recover certain taxes paid under protest. The actions were consolidated in the superior court, and judgment was entered denying recovery to the vendors.

The vendors appealed to the Court of Appeals of Arizona, Division One, which reversed the trial court by a two-to-one decision. Watkins Cigarette Service, Inc. v. Arizona State Tax Commission, 21 Ariz. App. 196, 517 P.2d 1089 (1974). We accepted the Petition for Review filed by the State Tax Commission. The opinion of the Court of Appeals is vacated.

The case involves the single question: Is the state luxury tax part of gross income upon which the transaction privilege tax is computed? In more colloquial language suggested by the court below, is the state "cigarette tax" of ten cents per package included in determining the amount of the seller's state "sales tax" liability?

For the tax period in question—September 1, 1966 through June 30, 1969—the luxury privilege tax equaled ten cents on each package of cigarettes. A.R.S. §§ 42–1204, 42–1231. The transaction privilege tax rate was three percent of gross proceeds of sales or gross income. A.R.S. §§ 42–1309, 42–1312, 42–1361.

The facts are not in issue. The luxury tax statute requires that the vendors purchase revenue stamps which are to be affixed to the cigarette packages for sale through vending machines. A.R.S. § 42–1208. The stamps were purchased at the time from the tax commission at a rate of 98.5 per cent of the face value of the stamps. A.R.S. § 42–1207, as amended, Laws of 1965, 3rd S.S., ch. 2, § 1.

The vendors added to the sale price of each pack of cigarettes the amount of the luxury and sales taxes applicable to the transaction, and they affixed to each of their vending machines an itemized breakdown of the sales price reflecting the luxury, sales, and other applicable taxes. The vendors, in their returns filed with the State Tax Commission, did not, however, include as gross income the ten-cent portion of the purchase price of a package of cigarettes representing the amount of the luxury tax passed on to the consumer. The State Tax Commission assessed each vendor for three per cent of the luxury

privilege tax that they had previously deducted from their gross receipts, a total additional tax of nearly $50,000. After exhausting their administrative remedies, the additional tax was paid under protest and this action was filed.

The transaction privilege tax is levied and collected by the State Tax Commission " . . . in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be . . . ." A.R.S. § 42–1309 (A).

Gross proceeds of sales are defined as:

" . . . the value proceeding or accruing from the sale of tangible personal property without any deduction on account of the cost of property sold, expense of any kind, or losses, but cash discounts allowed and taken on sales shall not be included as gross income." A.R.S. § 42–1301(6).

Gross income is defined as

" . . . the gross receipts of a taxpayer derived from trade, business, commerce or sales and the value proceeding or accruing from the sale of tangible personal property, or service, or both, and without any deduction on account of losses." A.R.S. § 42–1301(5).

The transaction privilege tax and the luxury tax are directed toward different objects and thus are not subject to attack as amounting to "double taxation." Brophy v. Powell, 58 Ariz. 543, 551, 121 P.2d 647 (1942). The transaction privilege tax is an excise tax on the privilege or right to engage in an occupation or business in the State of Arizona. Tower Plaza Investments Limited v. DeWitt, 109 Ariz. 248, 508 P.2d 324 (1973). The luxury privilege tax is an excise tax on the privilege of selling particular luxury items to customers for consumption. Stults Eagle Drug Co. v. Luke, 48 Ariz. 467, 472, 62 P.2d 1126 (1936); Roseland v. City of Phoenix, 14 Ariz.App. 117, 481 P.2d 288 (1971).

Despite the broad language of A.R.S. § 42–1301 defining gross income and gross receipts, the vendors argue that the luxury tax should not be included as part of the gross receipts comprising gross income. The vendors maintain that by listing the amount of the luxury tax as a separate item the effect should be the same as listing the amount of the transaction privilege tax separately.

It is true that the legislature has provided concerning the transaction privilege tax:

"For the purpose of this article the total amount of gross income, gross receipts or gross proceeds of sales shall be deemed to be the amount received, *exclusive of the tax imposed by this article,* if the person upon whom the tax is imposed establishes to the satisfaction of the commission that the tax has been added to the sale price and not absorbed by him . . . ." A.R.S. § 42–1302 (emphasis added).

This Court in State Tax Commission v. Quebedeaux Chevrolet, 71 Ariz. 280, 226 P. 2d 549 (1951) had held before the enactment of the above statute that the transaction privilege tax, when separately stated and collected, was includible in gross income for purposes of computing the transaction privilege tax. The following year the legislature amended A.R.S. § 42–1302 to allow the deduction of the amount of the tax when it has been added to the sales price.

When the legislature acted in 1952 on the transaction privilege tax article, they did not add a similar section to the preceding article dealing with the luxury privilege tax. The legislators could have also provided a statute excluding the luxury tax from computations of transaction privilege tax, but they did not. Whether this was a conscious omission or an unconscious oversight is not for us to decide. We have no power to write such an exclusionary provision into the statute.

It is noteworthy that the inclusion of the amount of an excise tax paid as part of

the gross receipts of a business for computation of a sales tax or privilege transaction tax is done in several states. *See* Fischman & Sons, Inc. v. Department of Revenue, 12 Ill.2d 253, 146 N.E.2d 54 (1957); Martin Oil Service, Inc. v. Department of Revenue, 49 Ill.2d 260, 273 N. E.2d 823 (1971), cert. denied, 405 U.S. 923, 92 S.Ct. 961, 30 L.Ed.2d 794 (1972); Gurley Oil Co. v. Rhoden, 288 So.2d 868 (Miss.1974); Ferrara v. Director, Division of Taxation, 127 N.J.Super. 240, 317 A.2d 80 (1974). These decisions proceed on the reasoning that the excise tax imposed on the producer, distributor, or retailer constitute an element of the cost of the goods, and the amount of such taxes even if passed on to the consumer is an item of "cost" or "expense" that is not deductible from gross receipts for tax purposes.

Meaning must be given to the legislative intent disclosed by the broad language of A.R.S. § 42–1204, "In addition to all other taxes . . . ." Without limiting language such as is found in A.R.S. § 42–1302 we must give effect to the plain meaning of the language used in A.R.S. § 42–1204. Marquez v. Rapid Harvest Co., 89 Ariz. 62, 358 P.2d 168 (1960).

■ The fact that the vendors denote the luxury tax as one passed on to the purchaser does not change the character of the tax. The crucial question is: Who is liable for the tax? It is clear that the responsibility for paying the tax falls on the vendor for the privilege of engaging in a specific business. "Every person selling the luxuries defined is required to pay the tax." Stults Eagle Drug Co., *supra,* 48 Ariz. at 476, 62 P.2d at 1130. The fact that the economic burden of the tax is shifted to the consumer does not alter the responsibility of the vendor to pay the tax.

In State Tax Commission v. Garrett Corporation, 79 Ariz. 389, 291 P.2d 208 (1955), dealing with the transaction privilege tax, the Court made reference to the practice of separately stating the tax independent of the sales price:

"The section does not specifically authorize such practice; neither does it forbid it. It simply reflects the indifference of the legislature as to the business practices adopted by the taxpayer in conducting his affairs. . . . The liability for the tax is still the personal liability of the seller. There is no authorization whatsoever to directly shift the tax to the purchaser . . . ." 79 Ariz. at 393, 291 P.2d at 210.

■ The above proposition is applicable to the luxury tax. The vendors are free to absorb the luxury tax expense or pass it on to the consumer. The state is concerned with the ultimate fact—that the tax be paid by the vendor. When the tax is passed on as an increase in the purchase price of the item, the increase in price reflects a mere "expense" of the cost of doing business which is not deductible from gross income.

■ The vendors point out that the State Tax Commission did not include the luxury tax in computing the transaction privilege tax for 30 years, but in 1965 the commission adopted the current regulation which prohibits the deduction of the amount of luxury tax from gross income. The vendors argue that an uninterrupted administrative interpretation for some 30 years is entitled to great weight. Long v. Dick, 87 Ariz. 25, 347 P.2d 581 (1959). This rule of statutory construction is usually applied when there is a statutory ambiguity. City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964). In the present case we do not believe that there is any ambiguity in the statute, and the commission acted properly in reassessing its former position.

Finally, it is contended that the provisions of the statute which provided for the purchase price of revenue stamps to be bought at a discount evidences an intent

that the tax be deducted from gross proceeds for sales tax purposes. The Luxury Tax Act of 1935 originally required the taxpayer to buy the revenue tax stamps at their face value. Subsequently, the legislature provided that stamps could be purchased at a percentage of their face value, such as 95 per cent, A.C.A. § 73–1403 (1939), and later 98.5 per cent in 1965, A. R.S. § 42–1207, as amended, Laws of 1965, 3rd S.S., ch. 2, § 1.

■ It is suggested that such discounting is a method of compensating the vendor for handling the tax monies, affixing the stamps, filing reports, etc. It must be noted that the vendors must obtain the revenue stamps in advance and place them on the packages containing luxuries. See A. R.S. § 42–1207 through A.R.S. § 42–1209. The prepayment of the tax may account for the discount. In any event the prepayment is not relevant to the question at issue. The vendors charge the full amount of the luxury tax in the total purchase price of the package of cigarettes. The consumer is not a beneficiary of the discount. If anything, the statutory procedure of using revenue stamps and discounts supports the position of the commission that the luxury tax is merely part of the cost or expense of doing business, and, when this is added to the purchase price of the item, it is of the same character as any other business cost or expense which is not deductible from gross income.

The judgment of the trial court denying relief to the vendors is affirmed.

HAYS, C. J., and LOCKWOOD, J., concur.

CAMERON, Vice Chief Justice, and STRUCKMEYER, Justice (dissenting).

For the reasons so ably stated in the majority opinion of the Court of Appeals, Watkins Cigarette Service, Inc. v. Arizona State Tax Commission, 21 Ariz.App. 196, 517 P.2d 1089 (1974), we dissent.