LARIO, J. T. C.
The issue presented by this case is whether gasoline purchased by the City of Camden (Camden), subsequently pumped into its employees’ privately-owned vehicles and ostensibly used for governmental business is exempt from taxation under the New Jersey Motor Fuels Tax Act, N.J.S.A. 54:39-1 et seq. (act).
Plaintiff has filed a motion for summary judgment declaring:
1. Its purchase of motor fuel to be exempt from taxation under the act, or that
2. Any proceeding to collect any tax that may be due and owing should be maintained against the distributor from whom the city purchased its fuel and not against Camden, or,
3. In the alternative, if the court finds that the city is the party responsible for the payment of the tax, a partial summary judgment declaring that no interest be charged in that it reasonably assumed it was entitled to an exemption.
*461 The Director, Division of Taxation, has filed a cross-motion claiming the Division is entitled as a matter of law to a judgment dismissing the complaint.
Involved is the interpretation and application of § 65 of the act, which provides as follows:
The provisions of this chapter requiring the payment of taxes shall not be construed to apply to fuel sold to the Government of the United States, to the Government of this State or of any political subdivision of this State, or to any department or agency of any of the said governments for official use of such governments in motor vehicles, motor boats, or other implements owned or leased by this State or any political subdivision or agency thereof, but every distributor shall report such sales to the commissioner at such times and in such detail as the commissioner may require. Any claim for exemption under this section may be made by the distributor at any time within 2 years after the date of sale, but no claim made after the expiration of said 2 years will be recognized for any purpose by the State or any agency thereof. Any person who shall purchase or otherwise acquire fuel as herein defined upon which the tax has not been paid, from any of the aforesaid governments, or any of their agents or officers, for use not specifically associated with any governmental function or operation shall pay to the State of New Jersey the tax herein provided upon the fuel so acquired. It shall be unlawful for any person to use or to conspire with any governmental official, agent or employee for the use of any requisition, purchase order, or any card or any authority to which he is not specifically entitled by government regulations, for the purpose of obtaining any such fuel, upon which the tax has not been paid. [JV.J.S.A. 54:39-65]
The material facts involved, which are not disputed, are as follows: Camden is a municipality of the State of New Jersey. During the audit period of May 1, 1976 to February 29, 1980, plaintiff regularly purchased from its motor fuel distributor, and then stored, gasoline on which it had not paid the motor fuel tax.
Camden owns and leases most of the vehicles it uses for city business. In some cases, however, it has found it to be more economical and efficient to allow city employees to utilize their personal vehicles where necessary to carry out functions. In lieu of reimbursement for gasoline bought by each employee and used for city purposes, Camden has found it to be more expedient to supply gasoline directly to an employee which the employee then utilizes in the performance of his or her job with the city. Camden pumped a portion of the tax-free gasoline in question into the private vehicles of the various employees.
*462 The Director caused an audit to be made and, by reason of plaintiff’s incomplete records with respect to the actual amount of gallonage going into the private vehicles, the amount was estimated and it was determined to be 189,837 gallons, which gallonage Camden does not contest. Based thereon, the Director assessed a tax of $15,186.96 plus interest and penalties. Camden thereupon instituted this suit to set aside the assessment.
Defendant does not concede that all of the fuel pumped by Camden into its employees’ private vehicles was used for official governmental business. It is willing, however, to concede this material fact for the purposes of defendant’s cross-motion, claiming that it is not pertinent to its resolution.
In the event that plaintiff’s aforesaid purchases for public use are declared exempt, the amount of fuel used for official governmental business remains to be decided.
It is conceded by the Director that Camden qualified as a member of the class of governmental entities entitled to exemption provided by § 65. However, the Director claims that the fuel in issue does not qualify for the exemption in that it was not used in motor vehicles owned or leased by Camden.
Camden claims that § 65 grants an absolute exemption from payment of tax on all gasoline used in vehicles owned or leased by a government agency regardless of the use of the vehicle, and in situations not involving a governmentally-owned or leased vehicle the tax must be paid only on gasoline the use of which was “not specifically associated with any governmental function or operation.” Therefore, it urges there are two exempt situations provided for by § 65:
1. Gasoline used in vehicles owned or leased by a municipality, and
2. Gasoline used in vehicles not owned or leased by the municipality but whose use is specifically associated with any governmental function or operation.
In support thereof, it claims that the Legislature, in adopting § 65, limited liability solely to where
*463 ... [a]ny person who shall purchase or otherwise acquire [the tax free fuel] for use not specifically associated with any governmental function or operation shall pay ... the tax .. . upon the fuel so acquired. [N.J.S.A. 54:39-65, supra; emphasis supplied]
The Motor Fuel Tax Act was originally established by L. 1935, c. 319. It required every distributor or gasoline jobber to render a report to the Commissioner (now Director) stating the number of gallons of fuel sold by him and to pay a specified amount of tax on each gallon so reported. Id. at § 311 (codified at N.J.S.A. 54:39-27). It also placed liability for the tax on any person who acquired from an exempt governmental entity fuel on which no tax had been paid for use not specifically associated with any governmental operation. Id. at § 1201 (codified at N.J.S.A. 54:39-65).
§ 1201 granted an exemption for fuel sold to the United States Government. In § 1202 the Legislature provided that certain persons enumerated therein who used any fuels as defined for specified purposes and who paid the required tax for said fuel were to be reimbursed by the Commissioner the amount of the tax so paid upon submission of proof as required therein. Included therein as being entitled to a tax refund was any person who used any fuel for “operating or propelling motor vehicles ... owned by the state and all the political subdivisions thereof.” N.J.S.A. 54:39-66(l)(a); emphasis supplied. Thus, the Legislature originally provided that fuel sold to the United States Government was exempt from tax. Fuel sold to New Jersey municipalities was not initially exempt; instead, municipalities were required to pay the tax upon purchase and then apply to the Commissioner for a refund.
In 1955, the act was amended to permit a refund of taxes paid on fuel used in state- and municipally-leased vehicles as well as in owned vehicles. L.1955, c. 90 It 266, § 1 (amending N.J.S.A. 54:39-66(l)(a)). Attached to the amendment was the following statement:
Certain municipalities in the State are leasing motor vehicles for use in their police departments and for other purposes, instead of owning such motor vehicles....
*464 The foregoing amendments permit such municipalities to be reimbursed for gasoline taxes paid by them in the operation of such leased vehicles. [L. 1955, c. 90, § 1 — Senate Bill 183]
The Assembly, in 1974, introduced Assembly Bill 1591 providing to state, county and municipal governments an exemption from payment of the motor fuels tax in the same manner as had already been provided to the United States Government. It simultaneously deleted N.J.S.A. 54:39-66(l)(a), which permitted governmental agencies a refund of taxes paid on fuel used in owned and leased vehicles, thus simplifying administrative procedures by eliminating the necessity for municipalities to apply for refunds. The Senate amended the Assembly version to insert the language, “in motor vehicles ... owned or leased by this State or any political subdivision or agency thereof,” the identical language contained in N.J.S.A. 54:39-66(l)(a) before its deletion by this bill. Assembly Bill 1591, as amended by the Senate, was subsequently enacted into law and became incorporated into N.J.S.A. 54:39-65, the section in issue in this proceeding. L. 1975, c. 314, § 1.
The legislative history of this section clearly establishes the legislative purpose. From the adoption of the act in 1935 until 1955, a period of 20 years, taxes paid in fuel used in state- and municipally-owned motor vehicles were refunded upon application. In 1955 the act was amended to add leased vehicles. In its present version, adopted in 1975, all the Legislature did was change the procedure so that fuel sold to the State or any of its political subdivisions would be exempt from initial payment of tax, thereby avoiding the delay, inconvenience and administrative cost formerly incurred by requiring the agency to pay first and be reimbursed thereafter. No change in substance concerning liability for the tax was intended. As presently in effect the act exempts the payment of taxes for fuel sold to the State or any of its political subdivisions; (a) for the official use of such governmental agency, and (b) in motor vehicles owned or leased by the governmental agency. N.J.S.A. 54:39-65, supra. In ascertaining the meaning of a statute, it cannot be assumed that the Legislature used meaningless language. Ga- *465 bin v. Skyline Cabana Club, 54 N.J. 550, 555, 258 A.2d 6 (1969). To qualify for the exemption the Legislature intended that both of the requirements be met. Since the fuel in question was used in vehicles neither owned nor leased by plaintiff, the fuel purchase was not exempt from the motor fuel tax.
Camden next contends that even if the fuel in question is not tax-exempt, there exists no statutory authority for the Director to levy an assessment directly against the city. For support it refers to N.J.S.A. 54:39-65, which provides, as previously noted, that the purchaser is liable only for fuel acquired “for use not specifically associated with any governmental function or operation,” and it further states that “every distributor shall report such [tax free] sales to the commissioner at such times and in such detail as the commissioner may require,” and that any claim for exemption thereunder may be made by the distributor within two years after the date of sale. Camden concludes that if the questioned fuel is deemed taxable, the onus for seeking an exemption under this section is on the distributor rather than the municipality; that nowhere in the act is it required that a municipality report or pay tax on fuel bought or used for governmental purposes; nor must it file the exemption claim for fuel so purchased.
In further support of its position, Camden cites N.J.S.A. 54:39-27, which imposes a duty on distributors to report monthly the number of gallons of fuel sold and provides that “[a] tax of $0.08 per gallon on each gallon so reported . . . shall be paid by each distributor.... ” Camden claims that the onus for not only the reporting and filing of tax-free claims but also for the payment of the tax is thereby placed on the distributor rather than the customer, and it asserts that a proceeding to collect any tax that may be due and owing must be maintained against the distributor and not against the city.
Camden relies for support upon Ferrara v. Taxation Div. Director, 127 N.J.Super. 240, 317 A.2d 80 (App.Div.1974), wherein a gasoline retailer appealed a judgment of the former Division of Tax Appeals which held that federal and state excise *466 taxes on gasoline should he included in the computation of gross receipts for the purposes of Unincorporated Business Tax returns. In affirming the Division’s judgment the court commented upon the New Jersey Motor Fuel Tax:
There is nothing in the state gasoline tax statute to suggest that the legal incidence of the tax is on the consumer. To the contrary, on its face it is clear that the liability for payment of the tax rests on the distributor, [footnote omitted] The taxable event is any sale or use by a distributor; nowhere is the word ‘consumer’ employed in the statute. It would be inconsistent to say that the legal incidence is on the consumer, but at the same time to say that he is not liable for the tax. [at 248, 31 A.2d 80]
Based upon the foregoing, Camden concludes that the Director must proceed against the gasoline distributor for any tax due.
It is true that no express provision exists in N.J.S.A. 54:39-65 for the collection of tax where a governmental agency purchases gasoline ostensibly to be used as provided under this section, thereby rendering the purchase tax exempt, and later appropriates the fuel to a non-exempt use.
The Director alleges that the city’s liability for payment of the tax falls within the terms of N.J.S.A. 54:39-64(b) which, he claims, covers § 65 exemptions. The Director’s contention is incorrect. § 64(b) holds liable for payment of the tax
... [a]ny person purchasing motor fuel on which there has been no charge made to him of the motor fuel tax thereon, if the same be thereafter used or sold for use in the operation of a motor vehicle upon the highways....” [emphasis supplied]
This section, which was included in the act as originally adopted, refers only to those exempt purchases covered by N.J.S.A. 54:39-66, which was adopted simultaneously with § 64(b). § 64(b) does not include therein, nor did it contemplate, tax-free purchases granted to governmental agencies under § 65 as amended 20 years later. Otherwise, if § 64(b) were interpreted to apply to § 65 tax-free purchases of gasoline subsequently used in motor vehicles of governmental agencies, all purchases by governmental agencies would be taxable, even though used in motor vehicles owned or leased by the agency for official business, since the fuel would be used in motor vehicles operated on our public highways.
*467 In order to determine whether it was intended that only the distributor and not the consumer should be held liable, we are obligated to examine the entire act and “look beyond the specific terms of the enabling act to the statutory policy sought to be achieved.. .. ” New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978). See 2A Sutherland Statutory Construction (4 ed. Sands, 1973), § 46.05 at 56.
As heretofore stated, when the act was first enacted in 1935 the sole exemption provided therein at the initial purchase was for motor fuel sold to the United States Government. All other purchases, including those by New Jersey governmental agencies, were includable in determining the amount of tax reportable and payable by the distributor. This was the state of the act when Ferrara, supra, was decided in March 1974. When the Appellate Division concluded therein that the legal incidence of the tax was on the distributor and not the consumer, and that liability for payment of the tax therefore rested on the distributor, its decision was based upon the fact that the distributor was required to pay a tax on all sales. “There is nothing in the state gasoline tax statute to suggest that the legal incidence of the tax is on the consumer. . . . ” Id. at 248, 317 A.2d 80. § 65 was amended to exempt gasoline sold to the State and political subdivisions thereof after the Ferrara decision; the court’s blanket statement that the legal incidence of the tax was on the distributor does not apply to purchases made by governmental agencies pursuant to this amendment.
By its amendment of N.J.S.A. 54:39-65 in 1975 the Legislature, in effect, removed from the distributor the liability for payment of the tax on purchases by governmental agencies to be used as outlined therein.
It is clear that the exemption provided by N.J.S.A. 54:39-65 is also provided to the distributor. Under N.J.A.C. 18:18-14.2 the sole remaining requirement upon distributors making sales to government entities is that they report such sales and be prepared to fully document them at audit. The distributors are not required to obtain a statement from the governmental agency *468 with respect to the use to which the fuel will be put, or to keep track of use of the fuel once it has been sold. Such a requirement would place upon the distributor an impossible task. Indeed, in the present case it is apparent that even the Division’s auditor has had difficulty in securing the exact gallonage alleged to have been improperly pumped.
When a distributor sells motor fuel to a governmental agency, the distributor is entitled to presume, in the absence of reasonable cause to suspect otherwise, that the fuel will be used in accordance with the exemption statute’s requirements. If the fuel is not used in accordance therewith, absent complicity on its part, there is nothing in the act as amended to hold the distributor liable for the tax.
It is obvious that the Legislature adopted the 1975 amendment to N.J.S.A. 54:39-65 for the benefit of the governmental agencies involved. Prior to its passage the agency first paid the tax and could claim a refund only after it had demonstrated that the fuel was officially used in vehicles owned or rented by it. The amendment not only made it administratively easier for all concerned but it resulted in financial benefits. In addition to labor and overhead cost savings, it relieves the agency from the necessity of advancing funds which are subsequently returned interest free.
However, the Legislature’s purpose certainly was not to relieve governmental agencies from payment of the tax when the exemption provisions were not complied with by them. Since the Legislature removed from the distributor the requirement of paying this tax, it must be concluded that the liability for payment of the tax falls upon the agency whose actions converted the presumptive tax-free purchase into a taxable one. Any other construction of the amendment would render meaningless the prohibitions placed upon the use of tax-exempt purchases. A construction is to be avoided that will render any part of a statutory enactment inoperative, superfluous or meaningless. Abbotts Dairies v. Armstrong, 14 N.J. 319, 327-328, 102 A.2d 372 (1954).
*469 The purpose of the Motor Fuels Tax Act is clearly to tax all sales of fuel except those expressly exempted. By removing the incidence of the tax from the distributor on presumably tax-free purchases by governmental agencies, it has placed the responsibility of properly using the fuel upon the purchaser.
Although the collection of taxes against agencies who improperly used fuel purchased as tax exempt was not expressly authorized by § 64(b), the Legislature clearly expressed therein its intent to tax motor fuel purchases which are not expressly exempted. From a consideration of the total act, it is clearly the responsibility of the Director to pursue the collection of the tax where it is due. Where a governmental agency purchases motor fuel ostensibly for the purposes set forth in N.J.S.A. 54:39-65 and subsequently uses it contrary thereto, the Director may levy the tax, which would have originally been payable, directly against the governmental agency.
We must now consider plaintiff’s request concerning total waiver of interest and penalties by reason of the fuel’s use for governmental purposes. The State Tax Uniform Procedure Law, N.J.S.A. 54:48-1 el seq., imposes interest of llh% a month on due and unpaid taxes, as well as imposing certain penalties for failure to pay those taxes when due. N.J.S.A. 54:48-4. The act is applicable to motor fuels taxes. The uniform act permits the Director, at his discretion, to waive the penalties imposed as well as up to one-half the amount of the interest due. N.J.S.A. 54:49-11. No authority exists to permit the Director to waive more than one-half the interest due. Since the Director has exercised his discretion and has waived all penalties and one-half of the interest due, no further relief may be afforded to plaintiff.
Judgment will be entered dismissing plaintiff’s complaint and affirming the Director’s tax assessment of $15,186.96, plus one-half of the interest due.